UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
(BOSTON DIVISION)

|  |  |  |
|---|---|---|
| Cherry Hills Apartments of Fort Worth LLC D/B/A FW Cherry Hills Apartments, LLC, Michael Farragher, Sheila Farragher-Gemma, Jeremy Shapiro, Anthony L. Farragher-Gemma and Robert Gemma<br>    Plaintiffs,<br><br>v.<br><br>Robert T. Engleby<br>    Defendant | : : : : : : : : : : : : : : | C.A. No. 1:14-cv-12953-LTS |

## DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO THE PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

The Defendant, Robert T. Engleby ("Engleby"), respectfully submits this Memorandum of Law in Opposition to the Motion for a Preliminary Injunction (the "Motion") filed by the Plaintiffs, Cherry Hills Apartments of Fort Worth, LLC d/b/a FW Cherry Hills Apartments, LLC, Michael Farragher, Sheila Farragher-Gemma, Jeremy Shapiro, Anthony L. Farragher-Gemma and Robert Gemma (collectively, the "Plaintiffs"). Plaintiffs have filed a Motion for a Preliminary Injunction Enjoining Foreclosure, wherein they seek a preliminary injunction against Engleby, restraining and enjoining him from "pursuing any foreclosure proceedings" on the property located at 6-8 Morgan Place, Newton, Massachusetts (the "Newton Property") until any claims and counterclaims currently pending between the parties in the District Court of the 17th

Judicial District in Tarrant County, Texas[1] (the "Texas Action") are resolved.  Pl. Mem. in Supp. Mot. for Prelim. Inj., at p. 1.

As set forth below, Plaintiffs have not satisfied their burden of proof for the issuance of a preliminary injunction.  <u>Rohm & Haas Elec. Materials, LLC v. Elec. Circuits Supplies, Inc.</u>, 759 F. Supp. 2d 110, 117-18 (D. Mass. 2010) (noting that the moving party bears the burden of proof for preliminary injunction) (citations omitted).

## FACTS AND TRAVEL

In or about November 2007, Cherry Hills Apartments of Fort Worth, LLC, a Colorado limited liability company[2] ("Cherry Hills Colorado"), and Clear River Partners, LLC, a Massachusetts limited liability company ("Clear River"), entered into a Purchase and Sale Agreement (the "Purchase Agreement") pursuant to which Cherry Hills Colorado agreed to sell and Clear River agreed to purchase certain real property containing an apartment complex commonly known as the Cherry Hills Apartments, located at 5250 Wonder Drive, Fort Worth, Texas (the "Property").  Complaint, ¶10.  In connection with its payment obligations under the Purchase Agreement, Clear River also agreed to assume the unpaid principal balance of Cherry Hills Colorado's prior mortgage loan related to the Property, the original principal amount of which was $3,481,000.00 (the "Loan").  Complaint, ¶11.  Thereafter, On February 15, 2008, Clear River assigned its rights and obligations under the Purchase Agreement to Plaintiff Cherry Hills Apartments of Fort Worth, LLC d/b/a FW Cherry Hills, a Massachusetts limited liability company ("Cherry Hills Massachusetts").   Complaint, ¶12.

---

[1] The Texas District Courts are state courts of general jurisdiction.  The District Court of the 17th Judicial District is located in Fort Worth, Texas.

[2] This entity is not to be confused with the Plaintiff in this matter, Cherry Hills Apartments of Fort Worth, LLC d/b/a FW Cherry Hills, which is a Massachusetts limited liability company.

As part of the sale contemplated by the Purchase Agreement, Thomas L. Engleby[3] agreed to guarantee the repayment of the Loan by Cherry Hills Massachusetts. Complaint, ¶13. As the Loan was non-recourse, the existing lender on the Property also required Thomas L. Engleby individually to give a Letter of Credit in the principal amount of $600,000.00 in favor of the lender, which instrument was issued by Wilmington Trust Company. Affidavit of Robert T. Engleby (hereinafter, "Engleby Aff."), ¶5, submitted contemporaneously herewith. In order to induce Thomas L. Engleby to provide the Letter of Credit, each of the individual Plaintiffs, who are the principals of Cherry Hills Massachusetts, executed a Letter of Credit Indemnity Agreement (the "Indemnity Agreement") in favor of Thomas L. Engleby. Complaint, ¶13; see Ex. A to Pl. Mem. in Supp. Mot. For Prelim. Inj. The terms of the Indemnity Agreement provide that the individual Plaintiffs would each indemnify Thomas L. Engleby against any liabilities he may incur in connection with his Letter of Credit and his guarantee of the repayment of the Loan by Cherry Hills Massachusetts. Id. In order to secure their obligations under the Indemnity Agreement, Plaintiffs, inter alia, granted a mortgage lien (the "Mortgage") on the property located at 6-8 Morgan Place, Newton, Massachusetts (the "Collateral"). Complaint, ¶14.

In 2009, Cherry Hills Massachusetts defaulted on the Loan, and Wilmington Trust Company called the Letter of Credit on November 23, 2009. Engleby Aff., ¶13. Engleby paid $600,450.00 to Wilmington Trust Company that day. Id. Pursuant to a Secondary Letter of Indemnity Agreement between Robert and Thomas Engleby, upon Robert's payment of the Letter of Credit obligation, he became subrogated to all of the rights of his father, Thomas L. Engleby under the Indemnity Agreement, the Mortgage and the Collateral. Engleby Aff., ¶14. Robert Engleby (hereinafter, "Engleby") then made demand upon the Plaintiffs for the

---

[3] Thomas L. Engleby is the father of the Defendant, Robert T. Engleby.

$600,450.00 that he had remitted to Wilmington Trust Company, plus accruing interest, costs, and attorneys' fees. Id., ¶15.

On or about November 18, 2013, Engleby filed suit in Texas State Court, seeking damages against the Plaintiffs for breach of contract as a result of their failure to repay their obligations pursuant to the terms of the Indemnity Agreement. Complaint, ¶25. The Plaintiffs to the instant matter filed an Answer and Counterclaim in the Texas Action. Complaint, ¶26. The Indemnity Agreement provides in Paragraph 12 thereof that Engleby may inter alia: (i) sue the Plaintiffs to enforce collection of the amounts owed under the Indemnity Agreement; (ii) foreclose on the Collateral, or (iii) do both simultaneously. Accordingly, on or about March 6, 2014, Engleby began foreclosure proceedings on the Newton Property by filing a Complaint under the Servicemembers Civil Relief Act in Massachusetts Land Court. Complaint, ¶27. Having taken all steps required under Massachusetts foreclosure law, Engleby scheduled a foreclosure sale of the Newton Property for July 15, 2014, but subsequently agreed to continue the same until July 31, 2014. The foreclosure on the Newton Property is presently scheduled for 1:00 p.m. (EST) on July 31, 2014.

In an effort to stall Engleby's efforts to foreclose on the Collateral, the Plaintiffs filed a Complaint in the Middlesex County Superior Court on or about July 8, 2014 and scheduled a hearing on a Motion for Preliminary Injunction for July 11, 2014 at 10:00 a.m. Engleby Aff., ¶18. However, the undersigned counsel for Engleby was not notified of the filing of the Complaint or the hearing on the Motion for Preliminary Injunction until 2:46 p.m. on July 10, 2014, mere hours before said hearing and several days following the filing of the Complaint and Motion for Preliminary Injunction. Engleby Aff., ¶19. Thereafter, Engleby removed the matter to the United States District Court for the District of Massachusetts on July 11, 2014, and filed a

certified copy of the Notice of Removal with the Middlesex Superior Court at approximately 9:30 a.m. that day.

## STANDARD OF REVIEW

A party seeking a preliminary injunction bears the burden of showing: (1) a substantial likelihood of success on the merits; (2) a significant risk of irreparable harm if the injunction is withheld; (3) a favorable balance of hardships; and (4) a fit (or, at least, a lack of friction) between the injunction and the public interest." EEOC v. Astra USA, Inc., 94 F.3d 738, 742 (1st Cir. 1996).

Likelihood of success on the merits is the "touchstone of the preliminary injunction inquiry." Philip Morris, Inc. v. Harshbarger, 159 F.3d 670, 674 (1st Cir. 1998); New Comm Wireless Servs., Inc. v. SprintCom, Inc., 287 F.3d 1, 9 (1st Cir. 2002) ("The sine qua non of this four-part inquiry is likelihood of success on the merits: if the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity.") As such, the likelihood of success on the merits "normally weighs heaviest on the decisional scales," and establishing this element "is 'critical' to a successful application for preliminary injunctive relief." Hearst Stations Inc. v. Aereo, Inc., 977 F. Supp. 2d 32, 36-37 (D. Mass. 2013) (quoting Coquico, Inc. v. Rodriguez–Miranda, 562 F.3d 62, 66 (1st Cir. 2009)); Marshall v. R.S. Means Co., Inc., 940 F. Supp. 39, 40 (D. Mass. 1996) (citing Narragansett Indian Tribe v. Guilbert, 934 F.2d 4, 6 (1st Cir. 1991)).  Consequently, "plaintiffs who are unable to convince the trial court that they will probably succeed on the merits will not obtain interim injunctive relief." Weaver v. Henderson, 984 F.2d 11, 12 (1st Cir. 1993).

**ARGUMENT**

In order to prevail, Plaintiffs must demonstrate that they have a likelihood of success on the merits – i.e., that they have a greater likelihood to prevail at trial than Engleby – and that they will suffer immediate and irreparable harm if a preliminary injunction does not issue. See Philip Morris, Inc. v. Harshbarger, 159 F.3d 670, 674 (1st Cir. 1998). Here, Plaintiffs simply cannot show a substantial likelihood of success on the merits.

**I.  PLAINTIFFS CANNOT DEMONSTRATE THAT THEY HAVE A LIKELIHOOD OF SUCCESS ON THE MERITS.**

Plaintiffs' Complaint contains three (3) counts: Count I – Injunctive Relief; Count II – Violation of G.L. c. 93A; and Count III – Violation of G.L. c. 231 §6 [sic]. Defendant Engleby will address each count *seriatim*.

**A.  Count I does not state a cause of action, as Injunctive Relief is a remedy – not a cause of action.**

Count I of Plaintiffs' Complaint, entitled "Injunctive and Equitable Relief" does not set forth a cognizable cause of action and is subject to dismissal by the Court. It is well settled in the United States District Court for the District of Massachusetts that "injunctive relief is not a stand-alone cause of action under Massachusetts or federal law." *Payton v. Wells Fargo Bank, N.A.*, 2013 U.S. Dist. LEXIS 27692, at *18 (D. Mass. Feb. 28, 2013); *see also Koufos v. U.S. Bank, N.A.*, 939 F. Supp. 2d 40, 46 (D. Mass. 2013)("[a]n injunction is not a cause of action, but a remedy."); *O'Neil v. Daimler Chrysler Corp.*, 538 F. Supp. 2d 304, 308 (D. Mass. 2008) (claim for injunctive relief does not allege an independent legal claim); *Ghazarian v. American Home Mortgage Servicing*, 2013 U.S. Dist. LEXIS 114744, at 13 (D. Mass. July 18, 2013)(dismissing the plaintiff's complaint because "[i]njunctive relief is not a cause of action"); *Mammola v. Mt.*

*Washington Cooperative Bank & East Boston Savings Bank,* 2014 U.S. Dist. LEXIS 43403, at *10 (D. Mass. Mar. 31, 2014)(plaintiff's complaint dismissed as "'injunctive relief'…is a remedy, not a cause of action); *Wentworth Precious Metals, LLC v. City of Everett*, 2013 U.S. Dist. LEXIS 14718, at *43 (D. Mass. Feb. 4, 2013) (noting that "[a]n injunction is a remedy not a claim").  It is clear that in circumstances such as the instant action, when a plaintiff merely sets forth a count for injunctive relief, the count is subject to dismissal by the Court, as it represents a prayer for relief, not a cause of action.  Accordingly, in accordance with well-settled case law articulated by the United States District Court for the District of Massachusetts, the Plaintiff is not likely to succeed on the merits of Count I.

### B. Plaintiffs cannot establish that Engleby provided Plaintiffs with falsified documents or that he misrepresented material information.

If Count I of Plaintiffs' Complaint can somehow be construed as an attempt to assert a claim for fraud or misrepresentation, it still lacks any merit.  To succeed on a claim for fraud under Texas law, Plaintiffs must prove that "(1) a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the representation was made with the intention that it be acted upon by the other party; (5) the party acted in reliance upon the representation; and (6) the party suffered injury." Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc., 962 S.W.2d 507, 524 (Tex. 1998) citing T.O. Stanley Boot Co. v. Bank of El Paso, 847 S.W.2d 218, 222 (Tex. 1992).  "[W]ith a fraudulent inducement claim, the elements of fraud must be established as they relate to an agreement between the parties." Haase v. Glazner, 62 S.W.3d 795, 798-99 (Tex. 2001).

In their Complaint and Motion for Preliminary Injunction, Plaintiffs contend that Engleby "made various intentional false representations to Plaintiffs including but not limited to assurances about existing leases, falsified rent rolls, and misrepresentations about the financial status of the apartments." Pl. Mem. in Supp. Mot. for Prelim. Inj., at p. 7-8.  These general allegations are identical to the vague claims made in the Texas Action, wherein the Plaintiffs (who are Defendants/Counterclaimants in the Texas Action) pray for rescission of the Indemnity Agreement.  Specifically, Plaintiffs make unsupported allegations that "[t]he tenant leases provided by the Defendant were intended to make the defendants [sic] believe that the apartments were more than ninety percent occupied when in fact the apartment's occupancy was just over fifty percent." Id. at 8.  In addition to lacking any supporting evidence, Plaintiffs allegations are also patently false, as the rent roll analysis prepared by the *buyer's own property manager* demonstrates that at the time of the closing the occupancy was above ninety percent. Engleby Aff., ¶10.  Accordingly, Plaintiffs cannot establish that Engleby made any representations that were false.

Plaintiffs' general and vague allegations against Engleby are simply unsupportable.  The Rent Roll Analysis performed by the buyer's own property manager indicates that there was 91.23% occupancy as of May 8, 2008 (the date of the closing). Id.  Thus, any statements made by Engleby to that effect are entirely controverted by reliable evidence.  Conversely, Plaintiffs' claims that Engleby misrepresented the occupancy of the apartments are specious and vague.

Instead, the Monthly Move In/Move Out reports for the Property in the months after the closing clearly demonstrate that the Property's low occupancy level of which Plaintiffs complain actually occurred over an extended period of time *following* the closing date.  For example, the Monthly Move In/Move Out report covering the date range from May 8 to May 31 indicates that

twelve (12) tenants moved out in that time without any tenants moving in. Engleby Aff., ¶12. As a result of this decreased occupancy, the May 31 rent roll analysis indicates that the occupancy level dropped to 82.46%. Id., ¶11. Additionally, the subsequent Monthly Move In/Move Out reports illustrate that the occupancy decreased by another eight (8) occupants before June 30, 2008, and again by eighteen (18) occupants before July 31, 2008. Id., ¶12. Even after both of said losses, the percentage of occupancy would have been approximately 59.65%.[4] See id. Consequently, even after almost three months had passed since the closing, the occupancy still had not fallen to the level of "just over fifty percent" that Plaintiffs contend was the occupancy at the time of sale. Pl. Mem. in Supp. Mot. for Prelim. Inj., at p. 8.

As such, Plaintiffs cannot establish that Engleby made any representation to Plaintiffs that was false. Given that a fraud claim requires the plaintiff to prove that the defendant made a representation that was false, the Plaintiffs cannot establish a likelihood of success on any fraud claims pled in the Complaint.

### C. Even if Plaintiffs have articulated a fraud or misrepresentation claim, Plaintiffs cannot succeed on their claim of fraudulent inducement as they have failed to plead such fraud with the requisite particularity.

Plaintiffs have failed to demonstrate that they are likely to succeed on the merits of their claim of fraudulent inducement, as they have failed to plead such claim with particularity. Federal Rule of Civil Procedure 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). This standard requires the pleader to "specify the who, what, where, and when of the allegedly

---

[4] Considering that there were 20 vacant units on May 31, 2008 (as indicated by Exhibit B, attached to the Affidavit of Robert T. Engleby) and that the Property lost another 26 occupants by July 31, 2008 (as indicated by Exhibit C, attached to the Affidavit of Robert T. Engleby), there would have been a total of 46 vacant units by July 31. Given that the Property contained 114 units, the percentage of occupancy on July 31 would have been approximately 59.65%.

false or fraudulent representation." Alternative Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 29 (1st Cir. 2004) citing Powers v. Boston Cooper Corp., 926 F.2d 109, 111 (1st Cir. 1991).

Plaintiffs' Complaint contains nothing but bare allegations that Engleby engaged in fraud and intentional misrepresentations. The one and only specific factual allegation as to fraud in Plaintiffs' Complaint avers that "the Defendant provided certified rent rolls to the Plaintiffs, and to the bank that provided financing, that represented that the apartments were more than ninety percent occupied at the time of sale. However, this was false." Complaint, ¶19. However, Plaintiffs fail to identify how this allegation was supposedly false and do not provide reference to even one piece of evidence to suggest that it was false.[5] Instead, Plaintiffs set forth a general allegation of fraudulent inducement with no credible factual support for it.

The United States Court of Appeals for the First Circuit has stated that one of the purposes of Rule 9's particularity requirement is "to safeguard defendants from frivolous charges which might damage their reputations." New England Data Servs., Inc. v. Becher, 829 F.2d 286, 289 (1st Cir. 1987). The Plaintiffs' groundless claims in the instant action are precisely the type of claims that the Rule 9 particularity requirement was designed to protect against. As a result of Plaintiffs, failing to plead their fraudulent inducement claim with particularity, the Plaintiffs have not and cannot establish that they are likely to succeed on the merits in this action.

### D. Plaintiffs cannot succeed in their claim that Engleby breached the Purchase and Sales Agreement.

Given that Plaintiffs cannot establish that Engleby misrepresented the occupancy of the Property or the financial status of same, Plaintiffs cannot succeed on their claim that Engleby

---

[5] In fact, all evidence, including the Rent Roll Analyses performed by the buyer's own property manager, indicate that the representations made by Engleby were entirely accurate. See Exhibit A and Exhibit B, attached to the Affidavit of Robert T. Engleby.

breached the Purchase and Sales Agreement ("PSA"). Nevertheless, Plaintiffs baldly assert that Engleby "breached the terms of the PSA by providing to Plaintiffs false assurances about existing leases, fraudulent rent rolls, and misrepresentations regarding the financial status of the apartment complex." Pl. Mem. in Supp. Mot. for Prelim. Inj., at p. 9.

However, as demonstrated in the previous section, Plaintiffs provide no specific support for such general allegations. Instead, all evidence indicates that Engleby's representations were entirely true and completely accurate. Accordingly, Plaintiffs will likely not be successful on their breach of contract claim.

### E. Plaintiffs cannot succeed on their claim that Engleby violated M.G.L. c. 93A by engaging in unfair and deceptive practices.

Count II of the Plaintiffs' Complaint seeks to assert claims under Massachusetts General Laws Chapter 93A. However, Plaintiffs cannot succeed on their claim that Engleby violated Mass. Gen. Laws ch. 93A, because they failed to send Engleby a demand letter more than thirty (30) days before commencement of the instant matter as required by Section 9(3) of Chapter 93A. A demand letter is a condition precedent to commencing an action under Mass. Gen. Laws ch. 93A, § 9. Burns v. Hale & Dorr LLP, 445 F. Supp. 2d 94, 96 (D. Mass. 2006)("[a]s a prerequisite to commencing a legal action under that statute, the plaintiff must deliver to the purported violator a 'written demand for relief'"). To comply with the statute, the demand letter must be sent thirty (30) days before the commencement of the action, must identify the particular act or acts alleged to be unfair or deceptive, and must identify the injury suffered as a result. See id.; see also Hermida v. Archstone, 950 F. Supp. 2d 298, 303 (D. Mass. 2013)("[p]rior to filing a Chapter 93A claim, the plaintiff must send a written demand letter 'identifying the claimant and reasonably describing the unfair or deceptive act or practice…and the injury suffered.'"); Dean v. Compass Receivables Management Corp., 148 F. Supp. 2d 116, 117-118 (D. Mass.

2001)("M.G.L. c. 93A, § 9(3) requires that a demand letter be mailed at least 30 days prior to commencing an action thereunder. Attachment of the Demand Letter to the complaint thus serves as proof of compliance with that section").

In this case, Plaintiffs' Complaint sets forth no allegation that they sent the required demand letter to Engleby, nor is a demand letter attached to said Complaint. Further, Engleby never received a Chapter 93A demand letter from Plaintiffs. Engleby Aff., ¶20. As such, Plaintiffs have failed to satisfy a condition precedent to maintaining a claim under Mass. Gen. Laws ch. 93A. Thus, because Plaintiffs' Chapter 93A claim must ultimately fail, Plaintiffs cannot prove that they are likely to succeed on such a claim.

### F. Plaintiffs cannot succeed in their claim that Engleby has violated M.G.L. c. 231 § 6.

Massachusetts General Laws Chapter 231, Section 6 permits the recovery of costs by or against the plaintiff in a matter involving "the recovery of an outstanding debt or claim sold or assigned **by an executor or administrator under a license of the probate court**." Mass. Gen. Laws ch. 231 § 6 (emphasis added). There is no allegation in the Plaintiffs' Complaint that this matter involves an outstanding debt or claim sold or assigned by an executor or administrator under a license of the probate court, and, as such, this section of the Massachusetts General Laws is wholly inapplicable to the instant matter. Count III is simply nonsensical. Presumably, Plaintiffs have mistakenly premised a claim on a statute that has no relevance to this action. As such, the Plaintiffs' purported claim under Mass. Gen. Laws ch. 231 § 6 has absolutely no likelihood of success on the merits.

Notwithstanding the foregoing, the introduction to the Plaintiffs' Complaint makes reference to a different statute, Massachusetts General Laws Chapter 231, Section 6F. Assuming arguendo that Count III of Plaintiffs' Complaint intended to set forth a claim under that statute,

Plaintiffs have once again asserted a mere remedy, not a cognizable cause of action.  Mass. Gen. Laws ch. 231 § 6F provides that:

> Upon motion of any party in any civil action in which a finding, verdict, decision, award, order or judgment has been made by a judge or justice or by a jury, auditor, master or other finder of fact, the court may determine, after a hearing, as a separate and distinct finding, that all or substantially all of the claims, defenses, setoffs or counterclaims, whether of a factual, legal or mixed nature, made by any party who was represented by counsel during most or all of the proceeding, were wholly insubstantial, frivolous and not advanced in good faith.

The wording of the statute itself makes clear that an award of attorneys' fees pursuant to Mass. Gen. Laws ch. 231 § 6F is to be made "upon motion" only once a "finding, verdict, decision, award, order or judgment has been made by a judge or justice or by a jury." *Id*. Further, Courts of the Commonwealth of Massachusetts have recognized that Mass. Gen. Laws ch. 231 § 6F provides a remedy, and not a cause of action.  See Brookline v. Goldstein, 447 N.E.2d 641 (Mass. 1983) (recognizing that Mass. Gen. Laws ch. 231 § 6F provided a remedy for a defendant forced to defendant a frivolous suit); Lussier v. Clark, 2006 Mass. Super. LEXIS 215, 6-7 (Mass. Super. Ct. Mar. 16, 2006) (plaintiff's motion to dismiss defendant's counterclaim under Mass. Gen. Laws ch. 231 § 6F was allowed **as the remedy under § 6F was only actionable upon a party's motion, after a determination by the fact finder that an action was frivolous and advanced in bad faith**) (emphasis added).

Moreover, the United States District Court for the District of Massachusetts recently held that "[t]he state remed[y], [codified at] Mass. Gen. Laws ch. 231, § 6F…[is] applicable only to cases brought in state courts." Anaqua, Inc. v. Schroeder, 2013 U.S. Dist. LEXIS 49559, at *6-7 (D. Mass. Apr. 5, 2013)(citing Brandon Assocs., LLC v. Failsafe Air Safety Sys. Corp., 384 F. Supp. 2d 442, 445 (D. Mass. 2005)). In Schroeder, the Court determined that even in a matter initiated in state court and subsequently removed to federal court "under Erie, such state court

remedies[, specifically Mass. Gen. Laws ch. 231, § 6F,] would not be available in federal court, because the Federal Rules of Civil Procedure squarely address the same topics." See id. (citing Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938)). Accordingly, it is clear that Mass. Gen. Laws ch. 231 § 6F merely sets forth a remedy; not a cause of action. Furthermore, such a remedy is not available in the United States District Court for the District of Massachusetts, even when a case is initiated in state court and removed to federal court.

Thus, regardless of whether Plaintiffs intended to assert a claim under Mass. Gen. Laws ch. 231 § 6 or Mass. Gen. Laws ch. 231 § 6F, Plaintiffs do not set forth a cognizable cause of action in Count III of their Complaint with any likelihood of success. Consequently, all of Plaintiffs' claims in their Complaint are not likely to succeed on the merits.

## CONCLUSION

Plaintiffs are unable to demonstrate a likelihood of success on the merits of their claims set forth in the three (3) counts of their Complaint, which is the first – and crucial – prong of any preliminary injunction analysis. Accordingly, Plaintiffs' Motion for a Preliminary Injunction Enjoining Foreclosure must be denied in accordance with well-settled Massachusetts law. Notwithstanding the foregoing, if this Court does grant Plaintiffs' Motion for a Preliminary Injunction Enjoining Foreclosure, Engleby requests that the Court require Plaintiffs to post a bond in the amount of at least $600,450.00 in accordance with Massachusetts Rule of Civil Procedure 65(c), in order to protect Engleby against the wrongful restriction of his default remedies.

- 15 -

                                        ROBERT ENGLEBY
                                        By his attorneys,

                                        */s/ Randall L. Souza*
                                        Randall L. Souza (#552216)
                                        Matthew R. Shechtman (#678523)
                                        SHECHTMAN HALPERIN SAVAGE, LLP
                                        1080 Main Street
                                        Pawtucket, RI 02860
                                        401-272-1400
                                        401-272-1403 (fax)
                                        rsouza@shslawfirm.com
                                        mshechtman@shslawfirm.com

Dated: July 28, 2014


## CERTIFICATE OF SERVICE

     I hereby certify that on this 28th day of July 2014, that I have caused the within *Memorandum in Opposition to the Plaintiffs' Motion for a Preliminary Injunction* to be filed with the Court via the ECF filing system. As such, this document will be electronically sent to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants.

                                                                               */s/ Randall L. Souza*